**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK**
_____

UNITED STATES OF AMERICA,

        v.                                                                                              18-MR-069-RJA
                                                                                             18-MJ-1020-JJM
                                                                                  **DECISION AND ORDER**

MILTON WILLIAMS,

        Defendant.

_____

The Government moves, pursuant to 18 U.S.C. § 3145(a)(1), to revoke Magistrate Judge Jeremiah J. McCarthy's order releasing the Defendant pending trial. After *de novo* review, and for the reasons stated below, the Government's motion is denied, but the Court modifies the conditions of release imposed by Judge McCarthy.

## BACKGROUND

The Defendant is charged with possessing, with intent to distribute, cocaine and marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); possessing firearms in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i); and possessing three firearms with defaced serial numbers, in violation of 18 U.S.C. §§ 922(k) and 924(a)(1)(B). *See* 18-MJ-1020, Docket No. 1 (Complaint). The Court assumes familiarity with the allegations in the criminal complaint, the Government's proffer at the detention hearing, and the arguments for and against release.

## DISCUSSION

**1. The Bail Reform Act's standard for pretrial detention**

The Court reviews Judge McCarthy's release order *de novo*. *United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985).

The Bail Reform Act "requires a court to order the pre-trial release of a defendant on a personal recognizance bond 'unless [the court] determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community.'" *United States v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007) (quoting 18 U.S.C. § 3142(b)). If a court determines that release on a recognizance bond would not "reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community," § 3142(c), "the law still favors pre-trial release 'subject to the least restrictive further condition, or combination of conditions, that [the court] determines will reasonably assure the appearance of the person as required.'" *Sabhnani*, 493 F.3d at 75 (quoting 18 U.S.C. § 3142(c)(1)(B)).

If, however, a court finds "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," the court "shall order the detention of the person before trial." 18 U.S.C. § 3142(f). The standard of proof by which a court must make detention findings depends on the basis for the Government's detention motion: If the Government seeks detention based on a defendant's danger, "[t]he facts the judicial officer uses to support a finding . . . that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence." 18 U.S.C. § 3142(f). In other words, "the evidence must support a conclusion of danger to the community 'with a high degree of certainty.'" *United States v. Enix*, 209 F. Supp. 3d 557, 563 (W.D.N.Y. 2016) (quoting *United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir. 1985)). If, on the other hand, the Government seeks detention based

on a defendant's flight risk, the Government must first prove by a preponderance of the evidence that "the defendant presents a risk of flight." *Sabhnani*, 493 F.3d at 68 n.5. If the Government does so, it must then prove by a preponderance of the evidence that "there are [no] conditions or a combination of conditions which reasonably will assure the presence of the defendant at trial if he is released." *United States v. Shakur*, 817 F.2d 189, 194-95 (2d Cir. 1987).

When a defendant is charged with committing certain offenses, the Bail Reform Act imposes "a presumption . . . that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3). Two of the charges in the criminal complaint in this case—the narcotics charge and the § 924(c) charge—trigger the presumptions of dangerousness and flight. 18 U.S.C. § 3142(e)(3)(A)-(B).[1]

"In a presumption case such as this, a defendant bears a limited burden of production—not a burden of persuasion—to rebut that presumption by coming forward with evidence that he does not pose a danger to the community or a risk of flight." *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001). "Once a defendant has met his burden of production relating to these two factors, the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court." *Id.* Thus, "[e]ven in a presumption case, the government retains the ultimate burden of persuasion by clear and convincing evidence that the defendant presents a danger to the community." *Id.*

---

[1] "Here, the averments of the [ATF] agent in support of the Criminal Complaint furnishes probable cause to believe that [the] Defendant committed the offense[s]" triggering the Bail Reform Act's presumptions of dangerousness and flight. *United States v. Rainey*, Nos. 13-MR-3S, 12-MJ-162, 2013 WL 321669, at ¶ 5 (W.D.N.Y. Jan. 28, 2013).

3

To determine whether the Defendant has rebutted the presumptions of dangerousness and flight, the Court considers the four factors listed in 18 U.S.C. § 3142(g): (1) the nature and circumstances of the crime charged; (2) the weight of the evidence against the Defendant; (3) the Defendant's history and characteristics, such as his family ties, employment, community ties, and past conduct; and (4) the nature and seriousness of the danger to the community or to an individual that the Defendant's release would present. *See Mercedes*, 254 F.3d at 436.

2. **Application to the facts of this case**

    A. **The nature and circumstances of the crimes charged**

The penalties the Defendant faces if he is convicted demonstrate the seriousness of the charges in this case. First, the Defendant faces a maximum penalty of 20 years' imprisonment for the narcotics distribution charge. 21 U.S.C. § 841(b)(1)(C).[2] To be sure, the U.S. Sentencing Guidelines would likely recommend a sentence well below the statutory maximum, but that sentence would run consecutive to a mandatory minimum five-year sentence for the 18 U.S.C. § 924(c) charge. Further, the statutory maximum penalty for the defaced-firearms charge is five years. Thus, if he is convicted, the Defendant faces a not-insignificant jail sentence, and one that is far greater than any sentence he has previously served.

The circumstances of the charged offenses are also serious. The Defendant is alleged to have possessed three handguns with defaced serial numbers, two of which, the Government proffers, were purchased by a straw purchaser in Pennsylvania.

---

[2] The weight of the cocaine and marijuana alleged in the complaint do not trigger a mandatory-minimum sentence under § 841. Moreover, the Defendant does not have a prior felony narcotics conviction and, thus, is not subject to an information pursuant to 21 U.S.C. § 851.

4

Moreover, the Government proffers that one of the firearms was traced to two shootings in July 2017. The Government acknowledges that it has no evidence connecting the Defendant to either of these shootings, and nothing in the record suggests that the Defendant has committed any act of violence in connection with this case.

Nonetheless, the Government's proffer underscores the seriousness of the firearm charges in this case, and it strengthens the statutory presumption that no condition or combination of conditions can reasonably ensure the safety of the community. Moreover, given the penalties the Defendant faces if he is convicted—including a mandatory five-year consecutive sentence—the nature of the crimes charged also strengthen the presumptions that apply in this case. The Defendant has not brought forth evidence rebutting this factor.

### B. The weight of the evidence against the Defendant

The weight of the evidence against the Defendant appears to be strong. The firearms and narcotics at issue were found in the Defendant's home, and one of the firearms was found on top of an envelope addressed to the Defendant. Officers also found two firearms in the kitchen, baggies of marijuana in the oven, cocaine, and a digital scale. *See* 18-MR-069, Docket No. 1-2 at 9-18, 21-28. In addition, the Defendant's state-issued identification card was found in the master bedroom, and the Defendant—who is unemployed and reports making $600 per month in rental income—was arrested carrying $2,500 in cash.

All of this is strong circumstantial evidence that the Defendant was engaged in narcotics trafficking: The Defendant's house contained distribution-weight narcotics (Complaint ¶ 7) and a digital scale, and the Defendant was found carrying a large sum of

cash that is inconsistent with his income. Moreover, given that the firearms were found in the Defendant's house, together with the complaint's common-sense allegation that drug traffickers "commonly possess firearms to protect themselves, their narcotics, and the proceeds from their drug sales," Complaint ¶ 6, there appears to be strong evidence that the Defendant, and not someone else, possessed the firearms found in his house.

In considering the strength of the evidence against the Defendant, the Court is mindful that its "function" when considering a detention motion "is not to determine guilt or innocence." *United States v. Jones*, 566 F. Supp. 2d 288, 292 (S.D.N.Y. 2008). Instead, the Court's purpose is only to assess "'the likelihood that the person will fail to appear or will pose a danger to any person or to the community.'" *Id.* (quoting *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985)). Judged by that standard, the strength of the evidence supports the presumptions that apply in this case.

**C. The Defendant's history and characteristics**

The Defendant is 34 years old and has lived in Niagara Falls for nearly his entire life. The Defendant reported, and his fiancé verified, that he is unemployed but earns income from renting the first floor of the house that was searched in this case. Counsel represents that the Defendant makes $600 per month in rental income.

Many other facts surrounding the Defendant's living situation were difficult to verify. For instance, the Defendant reported living with his fiancé of nine years in the house that was searched in this case; the Defendant's fiancé confirmed that she has been engaged to the Defendant for approximately nine years, but she reported that she does not live with the Defendant and that the Defendant currently lives at a different address, with his mother. Likewise, the Defendant reported that he has two children from a prior

6

relationship, both of whom, he claimed, live with him.  The Defendant's fiancé, by contrast, reported that the Defendant has three children—not two—and that each child lives with his or her mother in Niagara Falls.

The Defendant's criminal history is not particularly aggravating.  The Defendant pleaded guilty to a state drug misdemeanor when he was 16, for which he served one year of probation, apparently without incident.  The Defendant's next arrest was in 2013, when he was charged with another misdemeanor drug charge, as well as a misdemeanor charge for operating a car while impaired by drugs.  The Pretrial Services Report states that a bench warrant was issued as a result of those charges, but defense counsel represents that the warrant was issued because of an unpaid fine that the Defendant has since paid.  Docket No. 6 at 18:17-23.  Next, in 2014, the Defendant was charged with evading New York State's tobacco tax, "failing to disclose the origin of a recording," and unlawful possession of marijuana—a violation.[3]  It appears, however, that none of those charges resulted in a conviction.  Finally, the Defendant has had three (now expired) orders of protection entered against him.

Although the Defendant's criminal history does not warrant extended discussion, his conduct before Judge McCarthy and the Pretrial Services Officer does.  At his initial appearance, the Defendant told Judge McCarthy that he wanted to "move this as soon as possible.  I basically—am raising two daughters, I'm a single father of two daughters, *their mother passed away*.  So I'm the sole proprietor of my daughters."  Docket No. 5 at

---

[3] The Pretrial Services Report does not provide more detail for this charge, but it appears the Defendant was charged with offering for rental or sale a recording, "the cover, box, jacket or label" of which "does not clearly and conspicuously disclose the actual name and address of the manufacturer or the name of the performer or principle artist."  N.Y. Penal Law § 275.35.  The Defendant was charged with committing this crime in the first degree, which is a Class E felony.  N.Y. Penal Law § 275.40.

7

6:9 – 12 (emphasis added).  The Defendant then reaffirmed that his daughters' mother "passed away," and that, as a result, he "pretty much ha[s] [his] kids 97% of the time."  *Id.* at 6:14-19.  And when the Defendant was interviewed by the Pretrial Services Officer the next day, he reported—once again— that the mother of his children was "deceased."  Docket No. 6:21:6; Pretrial Servs. Report at 2.

At the detention hearing before Judge McCarthy, however, defense counsel confirmed that the mother of the Defendant's children is *not*, in fact, deceased.  Counsel argued that the Defendant may have been "speaking figuratively, that she's a deadbeat, that she uses drugs."  *Id.* at 20:25 – 21:1.  Judge McCarthy found that this explanation "just doesn't ring true," *id.* 31:4-5, and the Court likewise gives it no weight.  To the contrary, the only apparent and reasonable explanation—particularly given the number of times the Defendant repeated his claim about his daughters' mother—is that the Defendant lied in an effort to garner sympathy and, therefore, obtain his release.  The Court fully agrees with Judge McCarthy that this behavior leads to "serious reservations about [the Defendant's] credibility."  *Id.* 31:3.

**D. The nature and seriousness of the danger if the Defendant were released**

If the Defendant were released, the primary risk of danger would, given the allegations in this case, be "the harm to society caused by narcotics trafficking," *United States v. Leon*, 766 F.2d 77, 81 (2d Cir. 1985), and the equally dangerous harm from trafficking illegal firearms.  The danger from such activity is highlighted in the record—one of the guns found in the Defendant's house was used in two shootings—and needs no further explanation.

\* \* \*

After carefully considering the facts proffered by the Government, the evidence brought forward by the Defendant, the factors set forth in 18 U.S.C. § 3142(g), and the statutory presumptions in this case, *id.* § 3142(e), the Court, upon *de novo* review, affirms Judge McCarthy's release order but modifies Judge McCarthy's conditions of release.

The penalties the Defendant faces, as well as the apparent strength of the Government's case, buttress the statutory presumption that no condition or combination of conditions could reasonably ensure his presence at trial. But the Defendant has introduced evidence that rebuts the presumption: He has strong ties to the community, relatively modest means, and has not lived anywhere else since he was a child. Strict conditions of release should therefore be sufficient to reasonably ensure the Defendant's presence as required.

It is a closer question whether the Defendant has brought forth evidence rebutting the presumption that no condition or combination of conditions can reasonably ensure the safety of the community and others. The conduct with which the Defendant is charged— trafficking drugs and illegal firearms—poses an obvious danger to the community. Likewise, the orders of protection that have been entered against the Defendant are not reassuring. And just as troubling is the Defendant's conduct before Judge McCarthy: If the Defendant is willing to lie to a federal judge in an effort to obtain his release, the Court is not confident that the Defendant understands the seriousness of what he is charged with, and the Court is not sure that the Defendant fully appreciates the consequences of continuing to commit crimes while on release.

But despite these serious misgivings, the Court cannot ignore that the Defendant's criminal history is not particularly troubling. And the Court cannot disregard counsel's

representation that, in the underlying state case, the Defendant has always appeared for court and has been on release—apparently without incident—since he was arrested nearly three months ago. The potential penalties in this case are, of course, likely stiffer than the penalties the Defendant faces in the underlying state case. But the Defendant's recent track record helps rebut the presumption of dangerousness that is otherwise fully supported by the nature of the charges and the weight of the evidence.

After careful consideration, the Court concludes that the conditions Judge McCarthy imposed are sufficient to reasonably ensure that the Defendant will not pose a danger to others or to the community if he is released. In particular, Judge McCarthy's home-incarceration condition severely inhibits (though, of course, does not eliminate) the Defendant's ability to threaten the community by continuing to sell narcotics and firearms.

To reasonably ensure that the Defendant does not do so, the Court modifies Judge McCarthy's conditions of release in two respects.

First, Judge McCarthy ordered that the Defendant's sister and fiancé execute a $25,000 signature bond. The Defendant's conduct before Judge McCarthy, however, does not give the Court enough confidence that the Defendant realizes the gravity of the situation he is in. As a result, the Court does not believe that the Defendant may fully appreciate—or be deterred by—the possibility that his sister and fiancé would face a $25,000 judgment if he were to commit more crimes while on release

The Court therefore believes that a more appropriate condition is for the Defendant to execute a bond secured by his home. The threat of losing both his home and the source of his income is, in the Court's view, a sufficient condition to reasonably ensure that the Defendant does not violate the conditions of his release. In other words, if the

Defendant were to commit more crimes while on release, he could not only return to jail, but he could face the equally tangible consequence of losing his home.

Second, the Court will impose a condition of zero tolerance for any violation of the terms of the Defendant's pre-trial release.

## CONCLUSION

After *de novo* review, the Court concludes that the Government has failed to carry its burden of showing that no condition or combination of conditions can reasonably ensure the Defendant's appearance as required and the safety of any other person and the community. 18 U.S.C. § 3142(f). The Government's motion to revoke Judge McCarthy's release order is therefore denied.

The Defendant shall be released on the following conditions:

- That the Defendant be placed on home incarceration at 1364 Pierce Avenue, Niagara Falls, New York, provided that the home is first approved by the U.S. Probation Office;
- That the Defendant, if able, contribute to the cost of home incarceration, as directed by the U.S. Probation Office, and that he not obstruct, or in any way tamper with, the electronic monitoring equipment used for home incarceration;
- That the Defendant execute a bond secured by the real property at 1364 Pierce Avenue, Niagara Falls, New York;
- That the Defendant refrain from excessive use of alcohol;
- That the Defendant refrain from any use, or unlawful possession of, any narcotic drug, unless prescribed to the Defendant by a licensed medical professional;
- That the Defendant submit to drug and/or alcohol testing and/or treatment, including co-payment for those services, as directed by the U.S. Probation Office;

- That the Defendant not obstruct, or attempt to obstruct, or tamper in any fashion, with the efficiency or accuracy of testing for prohibited substances;
- That the Defendant report to the Pretrial Services Office within 24 hours of his release from custody;
- That the Defendant surrender his U.S. Passport and any other international travel documents to the Clerk of Court, and that he refrain from obtaining a passport or other international travel document while on pre-trial release;
- That the Defendant not possess any firearm, dangerous weapon, or destructive device;
- That the Defendant clear any outstanding warrants;
- That the Defendant report any law enforcement contact to the U.S. Probation Office within 72 hours of such contact;
- That the Defendant report to the U.S. Probation Office within 24 hours of being released from custody; and
- There will be **zero tolerance** for any violations of the terms set forth above.

This case is recommitted to Judge McCarthy for further pretrial proceedings, to include execution of the secured bond.

**SO ORDERED.**


Dated: February 27, 2018      _s/Richard J. Arcara_
   Buffalo, New York          HONORABLE RICHARD J. ARCARA
                                                     UNITED STATES DISTRICT JUDGE